## Commonwealth *vs.* Glen S. Alebord.

Plymouth. October 8, 2013. - February 12, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, & Duffly, JJ.

*Constitutional Law,* Public trial, Jury, Waiver of constitutional rights, Assistance of counsel. *Practice, Criminal,* Public trial, Empanelment of jury, Waiver, Assistance of counsel. *Jury and Jurors. Waiver.*

At a criminal trial, the failure of counsel to object to the closure of the court room to the public during jury empanelment constituted a waiver of the defendant's right to a public trial under the Sixth Amendment to the United States Constitution, given counsel's awareness of the closure [111-113]; further, the failure of counsel, who was deeply experienced in the practice of criminal law at the time, to object to the exclusion of the public during jury empanelment did not constitute ineffective assistance [113-114].

Indictment found and returned in the Superior Court Department on December 29, 2000.

Following review by the Appeals Court, 80 Mass. App. Ct. 432 (2011), a motion for a new trial was heard by *Linda E. Giles,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Chauncey B. Wood* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

*Edmund D. LaChance Jr.,* pro se, amicus curiae, submitted a brief.

*Sharon Fray-Witzer* for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

Cordy, J. On February 5, 2004, at the Superior Court in Brockton, the defendant was convicted by a jury of murder in the second degree for the shooting death of Benjamin Shiren. During jury empanelment the court officers closed the court room to all members of the public, as was the custom and practice at

the time in that court. Among those excluded were Katrina Lawson, Lorraine Wilder, and William Wilder, the defendant's friend, sister, and brother-in-law, respectively.[1] The defendant did not object to the court room closure, nor did he raise any claim relating to its closure in his first motion for a new trial, which was denied in 2005, or in his direct appeal, which was decided in 2006. See *Commonwealth* v. *Alebord*, 68 Mass. App. Ct. 1 (2006).

In 2008, the defendant filed a second motion for new trial, claiming that the closure of the court room was structural error necessitating reversal. After an evidentiary hearing, the motion judge, who was also the trial judge, found that no closure had occurred and that, at any rate, the defendant had waived his claim by failing to raise it at trial or on appeal.

The Appeals Court vacated the decision and remanded the case for further proceedings consistent with its view that the right to a public trial under the Sixth Amendment to the United States Constitution may be waived only by a personal and knowing waiver by the defendant, either personally or through counsel. *Commonwealth* v. *Alebord*, 80 Mass. App. Ct. 432, 438-439 (2011).[2] On remand, the judge again denied the defendant's motion for new trial, finding that, although the defendant had not waived his right to a public trial, the eighty-minute closure of the court room for jury empanelment was de minimis. On appeal, the defendant argues that the exclusion of his family and friend from the court room constituted a violation of his right to a public trial pursuant to the Sixth Amendment to the United States Constitution. He avers that the eighty-minute closure could not have been de minimis, and that it instead constituted structural error, requiring an automatic reversal of his conviction.

Although we conclude that the closure of the court room for the entire empanelment process was not de minimis, we affirm the order denying the defendant's second motion for new trial

---

[1]Because Lorraine Wilder and William Wilder share the same last name, we use their first names in this opinion.

[2]In *Commonwealth* v. *Lavoie*, 464 Mass. 83, 88-89, cert. denied, 133 S. Ct. 2356 (2012), this court concluded that defense counsel by his or her actions can waive the right to a public trial during jury empanelment without the defendant's express consent, effectively overruling *Commonwealth* v. *Alebord*, 80 Mass. App. Ct. 432 (2011).

on other grounds. The defendant waived his right to a public trial where his experienced trial counsel was aware that the court room was routinely closed to spectators during the jury empanelment process and did not object. Further, defense counsel's failure to raise such an objection did not fall "measurably below that which might be expected from an ordinary, fallible lawyer" at the time. See *Commonwealth* v. *Morganti, ante* 96, 103-105 (2013). Thus, the defendant's motion for new trial was properly denied.

1. *The court room closure.* Following the defendant's filing of his second motion for new trial, the judge held an extensive evidentiary hearing in order to determine whether the court room was closed during the jury empanelment in this case. The hearing also encompassed more broadly the practices of court officers and defense counsel at the Superior Court in Brockton (Brockton Superior Court) with regard to jury empanelments at the time of the trial in 2004.

The defendant first presented testimony from Lawson, Lorraine, and William. All three testified that they arrived at the court room on the morning of February 3, 2004, and waited outside the court room. They attempted to enter the court room with the jurors, but were prevented from doing so by a court officer stationed at the only public entrance to the room.

Lawson testified that she spoke to Attorney Jack Atwood, the defendant's trial counsel, before jury empanelment. She testified that, after jury empanelment concluded, "Jack Atwood came out and told us jury selection was picked and that we would be able to enter the court room." She also testified that, when he asked her during the trial where she had been, she responded that she had not been allowed into the court room during jury empanelment. Lorraine essentially echoed Lawson's testimony regarding Atwood's knowledge that they were excluded.[3]

With the court room cleared, seventy-two prospective jurors were brought in, leaving no seats available for any spectators.[4]

---

[3]The judge did not credit the assertions of Lawson or Lorraine that they told Attorney Jack Atwood that they had been excluded.

[4]The second session court room, where the voir dire took place, can accommodate approximately sixty people sitting and eighty people standing.

At defense counsel's request, the process of jury empanelment proceeded by way of individual juror questioning at sidebar. The empanelment process lasted approximately eighty minutes, during which fourteen jurors were empaneled.

Atwood testified that he saw Lorraine and Lawson on the first day of trial.[5] Although he could not recall specifically whether they were present in the court room for jury empanelment, he recalled that the public had been excluded from the court room during jury empanelment. He attributed this exclusion to the long-standing practice in Brockton Superior Court of closing the court room during jury empanelment.

Atwood went on to testify that, in thirty-six years of trying cases, he never had witnessed a trial in Brockton Superior Court in which the public was permitted to attend the jury empanelment process.[6] He noted that, in his experience, "the court officers will clear the court room and say, 'Everyone who's a witness or family, you have to leave, we'll let you back in after the jury selection has taken place.' " He never had objected to this exclusion. He also testified that he was aware of his client's Sixth Amendment right to a public trial, but that he was not cognizant at the time of trial that the right extended to the jury empanelment process.

Due to the fact that the case involved the killing of the African-American victim by the Caucasian defendant, Atwood was primarily concerned with excluding jurors who had heard of the case or might harbor racism. To that end, Atwood filed a motion for individual voir dire. Although he did not testify that his failure to object to the exclusion of the public from the empanelment process was a tactical decision, he acknowledged that he had requested individual voir dire largely to encourage candid answers outside public view. He further testified that, while focused on the process of jury empanelment, he "was hardly checking on the door [to the court room], frankly." He also testified that the court room sometimes could not fit the entire venire.

---

[5]He did not remember Lawson's name, but he testified that he saw the defendant's "significant other." Lawson was the defendant's girl friend at the time of trial.

[6]Atwood tried his first case in Brockton Superior Court in 1973. At the time of the hearing, he had tried, by his estimation, over 200 cases there.

The defendant also offered testimony from John Darrell, the attorney in charge of the Plymouth County office of the Committee for Public Counsel Services (CPCS).[7] Darrell testified that, until 2007, the court officers at Brockton Superior Court, pursuant to their standard practice, invariably required all spectators to wait outside the court room during jury empanelment in order to fit all the members of the venire into the court room.[8]

Darrell was similarly aware of his clients' right to a public trial. However, he did not object to the closure of the court room during jury empanelment in any of the hundreds of cases he had tried in the Brockton Superior Court. While unable to articulate a reason for his failure to object, Darrell testified that "[i]t seemed to work that way."

Darrell also acknowledged that he subscribed to the "theory" that the privacy or secrecy of an individual voir dire is more conducive to obtaining candid answers from potential jurors, particularly in cases with racial or sexual undertones. Darrell also admitted that, while he had the ability to address the court room closure policy with the court, he never did so.[9]

At the conclusion of the evidentiary hearing, the Commonwealth argued that the defendant waived his claim of error by failing to object at trial. The Commonwealth further argued that the waiver did not constitute ineffective assistance of counsel because Atwood made the tactical decision to ask for an individual voir dire and to focus on the jury empanelment process rather than on the openness of the court room. Finally, the Commonwealth argued that even if the error were not waived,

---

[7]John Darrell was appointed to his position as attorney in charge approximately eight years before the hearing. He had tried cases in Brockton Superior Court for approximately twenty-five years, and "couldn't even begin" to estimate the specific number of cases that he had tried there.

[8]Darrell testified that, after 2007, the court officers began ensuring that every potential spectator was permitted to sit in the court room throughout the empanelment process.

[9]The Commonwealth presented testimony from Leo Foley, assistant clerk-magistrate of the Superior Court in Plymouth County. Foley testified that the court room could fit a maximum of approximately eighty people. He also testified that the clerk's minutes did not show any order to close the court room. Tom Condon, the assistant chief court officer at the Brockton Superior Court, added that at the time of the trial, a policy was in place where the court room was to remain open to family members during jury empanelment.

the closure did not violate the defendant's Sixth Amendment right because it was de minimis.

As noted, the motion judge initially denied the defendant's motion for new trial, in part because the defendant waived his objection, given counsel's failure to object to the exclusion of Lawson, Lorraine, and William.[10] After her decision was vacated by the Appeals Court and the case remanded for further proceedings, the judge concluded that although the Commonwealth had failed to sustain its burden of establishing a waiver, because the defendant had not explicitly made a knowing, intelligent, and voluntary waiver, the defendant's Sixth Amendment rights were not violated because the closure was de minimis.[11]

2. *Discussion.* The Sixth Amendment to the United States Constitution guarantees all criminal defendants "the right to a speedy and public trial." See *Waller* v. *Georgia*, 467 U.S. 39, 46 (1984). The right to a public trial extends to the jury selection process. *Presley* v. *Georgia*, 558 U.S. 209, 213 (2010). *Owens* v. *United States*, 483 F.3d 48, 66 (1st Cir. 2007). *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106 (2010). "Conducting jury selection in open court permits members of the public to observe trial proceedings and promotes fairness in the judicial system." *Commonwealth* v. *Lavoie*, 464 Mass. 83, 86, cert. denied, 133 S. Ct. 2356 (2013).

There is no dispute between the parties at this juncture that the eighty-minute exclusion of the public during the jury voir dire constituted a closure.[12] And, as we have previously con-

---

[10]The judge also concluded that the court room was not closed because she did not order a closure, that the exclusion was necessary due to the size of the venire, and that the empanelment was conducted under the watchful eye of the venire itself.

[11]In so concluding, the judge noted that the court room was closed for only eighty minutes of a four-day trial, that the individual voir dire at sidebar would have been inaudible to spectators, that trial counsel's lack of objection suggested that he deemed the closure to be inconsequential, and that appellate counsel did not see fit to raise the issue either in his direct appeal or in his first motion for new trial.

[12]In limited circumstances, a judge may bar spectators from portions of a criminal trial. *Commonwealth* v. *Martin*, 417 Mass. 187, 193 (1994). To do so, a judge must make a case-specific determination that closure is necessary, satisfying four requirements: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure

cluded, the closure of the court room for the entire empanelment process is not de minimis. See *Commonwealth* v. *Morganti*, *supra* at 101. Consequently, we focus on the parties' arguments: first, whether the defendant, through the acquiescence of counsel, waived his right to an open court room during the empanelment; and second, if so, whether defense counsel's actions constituted ineffective assistance.[13]

It is well settled that the violation of a defendant's Sixth Amendment right to a public trial is structural error requiring reversal. See *United States* v. *Marcus*, 560 U.S. 258, 263 (2010), citing *Waller*, 467 U.S. at 39 (limited class of errors deemed "structural" include violation of right to public trial); *Cohen (No. 1)*, 456 Mass. at 105 (in determining whether public trial right was violated, court cognizant that such violation is "structural error and not susceptible to harmless error analysis" [citations omitted]). However, even structural error "is subject to the doctrine of waiver." See *id.* at 105-106; *Mains* v. *Commonwealth*, 433 Mass. 30, 33 n.3 (2000) (deficient reasonable doubt instruction is structural error that is subject to waiver). The defendant himself need not consent to a waiver of his right to an open court room during the jury empanelment process; trial counsel may waive the right on his own as a tactical decision without informing his client. *Lavoie*, 464 Mass. at 88-89, citing *Gonzalez* v. *United States*, 553 U.S. 242, 249-250 (2008). Further, the right to a public trial may be procedurally waived by a failure to lodge a timely objection to the offending error.

must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Id.* at 194, quoting *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984). No such findings were made in this case.

[13]The Commonwealth's argument that the cases of *Presley* v. *Georgia*, 558 U.S. 209, 213 (2010), and *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94 (2010), announced a prospective new rule is without merit. While the extension of the right to a public trial to jury empanelment proceedings was first enunciated in *Presley*, the Court there noted that it was "well settled" that the Sixth Amendment right extends to jury voir dire. 558 U.S. at 213. Thus, the right to a public trial during jury empanelment is not a new rule, as it falls squarely within the class of rules that are "dictated by precedent," as the result was "apparent to all reasonable jurists" at the time the defendant's conviction became final. *Commonwealth* v. *Sylvain*, 466 Mass. 422, 428 (2013), quoting *Chaidez* v. *United States*, 133 S. Ct. 1103, 1107 (2013). It therefore applies retroactively to the defendant.

See *Hatcher* v. *Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001), cert. denied, 536 U.S. 926 (2002) (structural error analysis inapplicable to State court conviction where issue not preserved by objection); *Commonwealth* v. *Morganti, supra* at 102 (right to public trial waived where counsel was aware of practice of closing the court room during jury empanelment and acquiesced by failing to object); *Lavoie, supra* at 88 (right to public trial waived where counsel decided not to object to closure); *Commonwealth* v. *Dyer*, 460 Mass. 728, 736-737 & nn.7-8 (2011), cert. denied, 132 S. Ct. 2693 (2012) (counsel and defendant waived error when neither objected to conducting voir dire in judge's chambers, where public was excluded); *Commonwealth* v. *Horton*, 434 Mass. 823, 832 (2001) (waiver where counsel asked for individual voir dire and never objected to questioning in the deliberation room). See also *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 314 n.3 (2009) (holding that right to confrontation may be waived by failure to object, and that States may adopt procedural rules governing exercise of such objections). Contrast *Presley*, 558 U.S. at 210 (error preserved by objection); *Waller*, 467 U.S. at 42 (same); *Cohen (No. 1)*, 456 Mass. at 100 (same).

Here, defense counsel, who had practiced extensively in Brockton Superior Court, testified that he was aware that the court room was closed to the public during empanelment to facilitate jury empanelment, and that he did not object thereto. Consequently, we conclude that the defendant's right to a public trial during that portion of the proceedings has been waived. See *Commonwealth* v. *Morganti, supra.*

If an error is waived due to a failure of defense counsel to object, we still may have occasion to review that error in the postconviction context of a challenge to trial counsel's effectiveness in failing to raise the objection. *Commonwealth* v. *Hardy*, 464 Mass. 660, 665, cert. denied, 134 S. Ct. 248 (2013). See *Owens*, 483 F.3d at 63 (defendant "procedurally defaulted his public trial claim by failing to object to the courtroom closure at trial and failing to preserve the objection on appeal," resulting in ineffective assistance analysis). Consequently, we proceed to that analysis.

Where a defendant attributes the failure to preserve a claim

to the ineffective assistance of counsel, "we use the ineffectiveness of counsel standard set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974)." *Lavoie*, 464 Mass. at 89, quoting *Commonwealth* v. *Azar*, 435 Mass. 675, 686-687 (2002). "Counsel is ineffective where his conduct falls 'below that which might be expected from an ordinary fallible lawyer' and prejudices the defendant by depriving him 'of an otherwise available, substantial ground of defence.' " *Lavoie, supra* at 89, quoting *Saferian, supra* at 96. In evaluating the conduct of counsel, it "must be measured against that of an 'ordinary fallible lawyer' . . . at the time of the alleged professional negligence, and not with the advantage of hindsight." *Commonwealth* v. *Drew*, 447 Mass. 635, 641 (2006), cert. denied, 550 U.S. 943 (2007) (rejecting application of 1999 standards to performance of counsel appointed in 1980). Cf. *Commonwealth* v. *Clarke*, 460 Mass. 30, 43 (2011) (concluding that right to effective assistance of counsel after 1996 included right to accurate advice as to deportation consequences of guilty plea, where for at least fifteen years professional norms have imposed that obligation on counsel). We look to whether the conduct fell within a range of professionally reasonable judgments based on the professional norms as they existed at the time. *Strickland* v. *Washington*, 466 U.S. 668, 687-688 (1984). The measure we use in assessing attorney conduct is an objective one. See *Hardy*, 464 Mass. at 665; *Saferian, supra* at 96.

With respect to whether counsel's conduct fell below that which might be expected from an ordinary fallible lawyer, this case stands on all fours with our analysis and decision in *Commonwealth* v. *Morganti, supra*. The custom and practice of the court officers and the defense bar at Brockton Superior Court regarding jury empanelment similarly were established. The trial judge and time period during which the trials took place, 2003 to 2004, were also the same. The failure to object to the exclusion of the public during jury empanelment by counsel deeply experienced in the practice of criminal law at the time did not constitute the ineffective assistance of counsel.

The order denying the defendant's motion for a new trial is affirmed.

*So ordered.*