COMMONWEALTH *vs.* TIMOTHY WHITE.

No. 12-P-1463.

Norfolk. October 9, 2013. - June 23, 2014.

Present: FECTEAU, BROWN, & HINES, JJ.

*Constitutional Law,* Public trial, Jury. *Practice, Criminal,* Public trial, Empanelment of jury, New trial. *Jury and Jurors.*

A Superior Court judge did not err in granting the criminal defendant's motion for a new trial in which the defendant argued that the closure of the court room for the general questioning of the venire violated his right to a public trial under the Sixth Amendment to the United States Constitution, where the exclusion of the public from the general questioning, given its substance, was not de minimis, despite the brevity of the closure; and where the closure was not inadvertent. [494-497]

INDICTMENTS found and returned in the Superior Court Department on April 15, 2003.

The cases were tried before *Barbara A. Dortch-Okara,* J., and a motion for a new trial, filed on September 28, 2010, was heard by her.

*Anne M. Thomas,* Assistant Attorney General (*Dean A. Mazzone,* Assistant Attorney General, with her) for the Commonwealth.

*Rosemary Curran Scapicchio* (*Dennis Toomey* with her) for the defendant.

HINES, J. The defendant, Timothy White, was convicted after a jury trial in the Superior Court of trafficking in cocaine, G. L. c. 94C. § 32E(*b*); larceny over $250, G. L. c. 266, § 30(1); and conspiracy to traffic in cocaine, G. L. c. 94C, § 40.[1] He filed a

---

[1]This case first went to trial in May, 2005, during which the jury found the defendant guilty of two counts of assault and battery, and not guilty of one count of possession of "ecstasy" with intent to distribute, one count of armed assault with intent to murder, two counts of assault by means of a dangerous

motion for a new trial claiming a violation of his right to a public trial under the Sixth Amendment to the United States Constitution and other alleged errors.[2] After an evidentiary hearing, the motion judge, who was also the trial judge, allowed the motion.[3] The judge ruled that the closure of the court room for the general questioning of the venire violated the defendant's Sixth Amendment right to a public trial and that the waiver doctrine did not apply to excuse the violation.[4] The Commonwealth filed this appeal, conceding the closure during the general questioning of the venire but arguing that it was de minimis and that, as such, it did not violate the defendant's right to a public trial.[5] For the reasons explained below, we affirm.

*Background.* We summarize the facts as found by the motion judge, supplemented with uncontested evidence from the motion hearing to provide context. See *Commonwealth* v. *Moreau*, 30 Mass. App. Ct. 677, 679 (1991), cert. denied, 502 U.S. 1049 (1992); *Commonwealth* v. *Johnson*, 82 Mass. App. Ct. 336, 337 (2012). The defendant, a former sergeant in the State police, was represented by Attorney Robert George, an experienced criminal defense attorney. The indictments charged that the defendant stole drugs from the State police evidence room and sold them for profit. Asserting that the indictments had attracted media attention, the defendant's counsel requested individual

weapon, and one count of assault and battery. A mistrial was called, because the jury deadlocked on five other counts. At the second trial, the defendant was convicted of the three counts at issue here, and was acquitted of distribution of marijuana and conspiracy to distribute marijuana.

[2]The defendant also argued that his Sixth Amendment right to confront witnesses was violated, his constitutional right to be present during a question from a deliberating jury was violated, and his Sixth Amendment right to effective assistance of counsel was violated.

[3]The defendant's direct appeal is stayed pending the disposition of this matter.

[4]The judge rejected all the other claims of error raised in the motion for new trial. In particular, she ruled that the individual voir dire did not implicate the right to a public trial because the defendant waived his right to a public trial when he requested and agreed to the closed court room procedure. The defendant has not appealed this ruling.

[5]Since the Commonwealth neither appears to have argued below nor contends on appeal that the defendant waived his right to a public trial in connection with the general voir dire, we need not address it. Were we to do so, however, such a contention would find no support on this record given the recent cases. See note 14, *infra*.

voir dire of the prospective jurors. The judge allowed the motion and proposed to conduct the voir dire in two phases: (a) general questioning of the venire as a group in the court room; and (b) individual questioning of each prospective juror in the judge's lobby. Counsel agreed to this procedure.

During the first stage of the empanelment, the judge posed the questions dictated by statute[6] and additional case-specific questions[7] related to possible bias arising from the defendant's status as a police officer. Members of the venire gave substantive responses to the questions by raising their juror cards. The court officer then called out the juror numbers, which the clerk recorded for later follow-up during the individual questioning. The general questioning elicited a chorus of affirmative responses to questions related to bias and the willingness to respect the constitutional protections afforded to criminal defendants at trial.

The court room was closed for this first phase of the empanelment. Members of the defendant's family attempted to enter the court room but were denied entry by a court officer. The closure was accomplished in accordance with then-established custom and practice in Superior Court in Norfolk County when a court room lacked sufficient space to seat all members of the venire.[8] The judge found that the court officer assigned to the court room "would have followed his practice of asking members of the public to leave the court room and

---

[6]Pursuant to G. L. c. 234, § 28, the judge asked the following questions: whether any juror (1) is related to the defendant, attorneys, or witnesses; (2) has any interest in the case; (3) has expressed or formed an opinion; (4) is aware of any bias or prejudice; and (5) could not abide by the presumption of innocence.

[7]The judge also asked whether any juror (1) has been, or has immediate family that has been, involved in a criminal proceeding; (2) has been, or has immediate family that has been, employed by a law enforcement agency; (3) would give more or less credence to a law enforcement officer's testimony based solely on his or her position; (4) is prejudiced against people with substance abuse problems; (5) has opinions about drug laws that could affect the view of the evidence; (6) would be influenced by the defendant's status as a police sergeant; (7) could impartially consider testimony of witnesses charged with similar crimes who testify due to a deal with the Commonwealth; and (8) could not be present for the two to three weeks likely required for trial.

[8]See *Commonwealth* v. *Cohen*, 456 Mass. 94, 102 (2010). The judge noted the crowded conditions and urged patience from those members of the venire who remained standing during the questioning.

keeping them from entering." Neither the defendant nor his attorney was aware that the court room was closed to the public during this general questioning of the venire.[9] Nor was the judge aware that the court room was closed to the public.

The second phase of the empanelment occurred in the judge's lobby with only the attorneys, the defendant, and the prospective juror present. During this phase, the judge questioned each prospective juror individually as to any affirmative answers to the general questions and posed further case-specific questions suggested by the defendant.[10]

*Discussion.* "The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done." Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). We review the judge's ruling "only to determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). Where a defendant's "new trial claim is constitutionally based, this court will exercise its own judgment on the ultimate factual as well as legal conclusions." *Commonwealth* v. *Cohen*, 456 Mass. 94, 105 (2010), quoting from *Commonwealth* v. *Tucceri*, 412 Mass. 401, 409 (1992).[11]

A defendant's right to a public trial is guaranteed by the Sixth Amendment. See *Waller* v. *Georgia*, 467 U.S. 39, 46 (1984). This right extends to the voir dire of prospective jurors. See *Presley* v. *Georgia*, 558 U.S. 209, 213 (2010). Conceding the closure, the Commonwealth's appeal proceeds solely on its claim that it was de minimis. To meet its burden under the de minimis test, the Commonwealth must establish that the closure was so trivial and insignificant that it did not rise to the level of a violation of the defendant's Sixth Amendment right to a public

---

[9]At the hearing, defense counsel testified that he was not aware of the closure or that the defendant's family and friends were excluded. He was never asked, however, if he was aware of the policy to close the court room, despite having thirty-one years of experience as a trial attorney.

[10]Because the individual voir dire is not included in the record, we have not been apprised of the specific questions asked during this phase of the empanelment.

[11]The Commonwealth has not argued that the judge erred in her finding that the court room was closed during the first phase of the empanelment. Nor do we, in accordance with our obligations under *Commonwealth* v. *Tucceri*, *supra*, have cause to question the vitality of that finding.

trial. See *Commonwealth* v. *Cohen, supra* at 108. Relying on *Peterson* v. *Williams*, 85 F.3d 39 (2d Cir.), cert. denied, 519 U.S. 878 (1996) (twenty-minute closure), and *United States* v. *Al-Smadi*, 15 F.3d 153 (10th Cir. 1994) (same), the Commonwealth's principal argument is that the short duration[12] of the court room closure for the general questions to the venire compels a conclusion that it was de minimis, and that it did not violate the defendant's right to a public trial. We disagree.

Although our appellate cases have recognized the de minimis exception to the general rule that an unjustified closure of the court room violates the Sixth Amendment right to a public trial,[13] none has defined its scope.[14] Nonetheless, we conclude that the Commonwealth's focus on the brevity of the closure is misguided. The duration of the closure is only one factor in an analysis more broadly concerned with "how seriously the values served by the Sixth Amendment were undermined" by the closure. *United States* v. *Gupta*, 699 F.3d 682, 689 n.1 (2d Cir. 2011), quoting from *Peterson* v. *Williams, supra* at 43. We decline, therefore, to adopt the brevity of the closure, untethered from any consideration of its effect on the Sixth Amendment "value of openness," as the proper measure of a de minimis closure. *Press-Enterprise Co.* v. *Superior Ct.*, 464 U.S. 501, 508-509 (1984). In our view, the directive to assess the extent to which the constitutional value of openness in the jury selection may have been undermined requires that we focus our

---

[12]The Commonwealth claims clear error in the judge's finding that the general questioning in the first phase of empanelment consumed "several hours." Given our view of the relevant legal principles, we need not decide whether this finding is clearly erroneous as it does not affect the analysis.

[13]See, e.g., *Commonwealth* v. *Cohen, supra* at 109 (noting in dicta agreement with the general principle that some closures may be de minimis but finding it inapplicable to the facts of the case before the court).

[14]With one exception, see *Commonwealth* v. *Downey*, 78 Mass. App. Ct. 224, 228-332 (2010) (partial closure not de minimis where there was a viable alternative), Massachusetts cases addressing this issue have involved a closure for the entirety of the voir dire, and consistent with *Presley* v. *Georgia, supra*, the courts have held that those closures are not de minimis. See *Commonwealth* v. *Wolcott*, 77 Mass. App. Ct. 457 (2010). See also *Commonwealth* v. *Morganti*, 467 Mass. 96, 101 (2014) (noting in dicta that "the closure of the court room for the entirety of the jury empanelment . . . even if lasting for only seventy-nine minutes" was not de minimis); *Commonwealth* v. *Alebord*, 467 Mass. 106, 112 (2014) (same).

inquiry on the substance, rather than the duration, of the event from which the public was excluded. We have done so and conclude that the exclusion of the public from the general questioning, given its substance, was not de minimis.

As a general proposition, "an open court room 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.' " *Commonwealth* v. *Cohen*, 456 Mass. at 107, quoting from *Press-Enterprise*, *supra* at 508. A closure during jury selection undermines the values of openness because the public loses the opportunity for assurance that those chosen to decide the defendant's guilt or innocence will do so fairly. See *Commonwealth* v. *Morganti*, 467 Mass. 96, 101 (2014), quoting from *Commonwealth* v. *Lavoie*, 464 Mass. 83, 86, cert. denied, 133 S. Ct. 2356 (2013) ("Conducting jury selection in open court permits members of the public to observe trial proceedings and promotes fairness in the judicial system"). The values of openness are preserved only if the public has the opportunity to observe and "hear the judge's questions and witness the prospective jurors' responses." *Cohen*, *supra* at 117.

The general questioning of the venire in this case, from which the public was excluded, was not limited to the formalities attendant to jury selection. The questions posed to the venire, questions required in every criminal case, lie at the core of our jury selection procedure. It is the procedure by which those prospective jurors who ultimately are chosen to serve declare their impartiality under the watchful eyes of the public. See *Owens* v. *United States*, 483 F.3d 48, 65 (1st Cir. 2007) (public presence encourages potential jurors to respond truthfully to questions regarding their biases and encourages lawyers to perform their functions more responsibly). As jury selection is generally conducted in Massachusetts, the statutory questions, including those of presumptive importance only in criminal cases, represent the most basic form of inquiry to ensure impartiality of prospective jurors. Indeed, were we to relegate this aspect of the voir dire to a mere triviality, the right of public access to jury selection required under *Presley* v. *Georgia*, *supra*, would be eviscerated. In the Commonwealth, empanelment in many criminal cases begins and ends with these statutory

questions.[15] Given the specific content of the general questioning in this case, we conclude that the closure to the general public was not de minimis.

The Commonwealth has not addressed the issue, but we note that the closure was not inadvertent, another factor weighing against the closure being de minimis. As the judge found, the closure was intentional and it occurred when the court officer purposely excluded members of the public, including the defendant's family, from the court room in accordance with the usual custom and practice. An intentional closure, in the absence of justification, weighs heavily against a conclusion that it was de minimis. Contrast *Peterson* v. *Williams*, 85 F.3d at 44 (closure de minimis in part because it was "entirely inadvertent"); *United States* v. *Al-Smadi*, 15 F.3d at 154-155 (same). While an intentional closure standing alone is not dispositive of the issue, it is a significant part of the calculus leading us to conclude that the closure of a substantively important aspect of the voir dire is not de minimis.

> *Order allowing motion for new trial affirmed.*

---

[15]The decision to pose questions beyond the statutory questions lies within the discretion of the judge except in cases involving "extraneous issues," which include cases of interracial rape, interracial murder, and child sex abuse where the victim and the defendant are of different races. G. L. c. 234, § 28. See *Commonwealth* v. *Lopes*, 440 Mass. 731, 737 (2004).