NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1829                                          Appeals Court


COMMONWEALTH  vs.  NARDO LOPES.


No. 12-P-1829.

Suffolk.      February 3, 2016. - June 15, 2016.

Present:  Kafker, C.J., Rubin, & Agnes, JJ.


Constitutional Law, Public trial, Jury.  Practice, Criminal,
     Public trial, Empanelment of jury.  Jury and Jurors.
     Evidence, Prior violent conduct.




     Indictment found and returned in the Superior Court
Department on June 1, 2001.

     The case was tried before Linda E. Giles, J., and motions
for a new trial, filed on September 30, 2010, and September 3,
2013, respectively, were heard by her.


     Derege B. Demissie for the defendant.
     Teresa K. Anderson, Assistant District Attorney, for the
Commonwealth.


     RUBIN, J.  This is the rare case in which a court room

closure was ordered over the defendant's objection during jury

empanelment, subsequent to the decision of the United States

Court of Appeals for the First Circuit in Owens v. United

States, 483 F.3d 48 (1st Cir. 2007). That case and the subsequent cases from the Supreme Judicial Court, see, e.g., Commonwealth v. Cohen (No. 1), 456 Mass. 94 (2010), and from the United States Supreme Court, see Presley v. Georgia, 558 U.S. 209 (2010), confirm that a defendant's right to a public trial under the Sixth Amendment includes a right to have the public present during jury empanelment.

As our cases and those of the Supreme Judicial Court have now made clear, prior to Owens, and notwithstanding Waller v. Georgia, 467 U.S. 39 (1984), some court rooms around this Commonwealth routinely were closed during jury empanelment. See, e.g., Cohen (No. 1), supra at 102 (Superior Court in Norfolk County); Commonwealth v. Lavoie, 464 Mass. 83, 84-85 (2013) (Superior Court in Middlesex County); Commonwealth v. Morganti, 467 Mass. 96, 98 (2014) (Superior Court in Plymouth County); Commonwealth v. Alebord, 467 Mass. 106, 109 (2014) (Superior Court in Plymouth County). In many such cases, because of the longstanding culture of these court houses, no contemporaneous objection was made to these closures. In a wide range of circumstances, under subsequent Supreme Judicial Court case law, those objections have been held waived. See, e.g., Lavoie, supra at 88-89; Morganti, supra at 101-102; Alebord, supra at 112-113.

In this case, however, the jury venire was brought into the court room and, over the defendant's objections, the court room was closed. In this direct appeal from his conviction of voluntary manslaughter, the defendant argues that closure was error, and that he is entitled to a new trial.[1]

The jury venire comprised ninety individuals. There were approximately eighty seats in the court room. The judge allowed in the entire venire and required ten of its members to stand. The defendant objected and asked to have his family seated but the judge, who was familiar with Owens, found that "[t]here is no possible seating for them. For safety reasons, we really don't want anybody to stand, but of necessity, we're making a few of the venire people stand. And, also, we cannot have them within the venire for fear of jury contamination. But if seats become available, . . . we can bring in your family members."

The court room was closed and the defendant's family members were excluded. They were not seated one at a time when individual seats became open. Nor were they seated as a group as soon as there was sufficient space in the court room to seat

---

[1] The defendant raised this issue below in his second motion for a new trial (while his direct appeal was stayed), but because he raised it in his direct appeal, i.e., his first appellate opportunity, the claim was preserved. See Mass.R.Crim.P. 30(c)(2), as appearing in 435 Mass. 1501 (2001). See also, e.g., Commonwealth v. Wall, 469 Mass. 652, 673 (2014); Commonwealth v. Celester, 473 Mass. 553, 578 (2016).

all the members of the defendant's family, allowing some space between those spectators and the prospective jurors. Only after the introduction of the attorneys, the judge's summary of the case, the general questioning of the venire, and the individual voir dire of thirty-seven prospective jurors,[2] did the judge instruct the court officer to seat the defendant's family members. Three more jurors[3] were subject to individual voir dire before the judge noted that the defendant's family members had been seated. They were then present for the individual voir dire of twenty jurors.[4] Thus, the defendant's family members missed the individual voir dire of two-thirds of the potential jurors.[5] The trial transcript does not indicate whether or not

---

[2] Eight of the thirty-seven were seated, five were subject to peremptory challenge by the Commonwealth, and seven were subject to peremptory challenge by the defendant.

[3] One of the three was subject to peremptory challenge by the Commonwealth.

[4] Eight of the twenty were seated, three were subject to peremptory challenge by the Commonwealth, and two were subject to peremptory challenge by the defendant.

[5] This portion of the voir dire spanned ninety-nine out of the 133 transcript pages in the relevant volume that was devoted to empanelment. The judge below found that empanelment lasted two hours and ten minutes. If one were to use the fraction of jurors questioned during the closure to estimate the fraction of the total empanelment period the court room was closed, one would estimate the closure lasted more than one hour and twenty-five minutes. Using the fraction of transcript pages to make the estimate, one would estimate the closure lasted more than one hour and thirty-six minutes.

the court officers subsequently allowed other members of the public to enter and be seated.[6]

In denying the defendant's second motion for a new trial,[7] the judge concluded that the closure was de minimis.  Cases decided by the Supreme Judicial Court and this court during the pendency of this appeal make clear, though, that this was not a de minimis closure.  See, e.g., Morganti, 467 Mass. at 101 (seventy-nine-minute closure, lasting entirety of empanelment, not de minimis); Alebord, 467 Mass. at 111 (eighty-minute closure, lasting entirety of empanelment, not de minimis); Commonwealth v. White, 85 Mass. App. Ct. 491, 495-497 (2014) (closure during general questioning of venire not de minimis), vacated on other grounds, 87 Mass. App. Ct. 1132 (2015).

Thus, as Cohen No. 1 and Presley make clear, the determination that closure was necessary must satisfy the four factors articulated in Waller.  Those factors are "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the

---

[6] The defendant challenges only the complete closure during the time period when his family members were excluded from the court room.

[7] The defendant's direct appeal was consolidated with his appeals from the orders denying his second and third motions for a new trial.

proceeding, and [4] it must make findings adequate to support the closure." Commonwealth v. Martin, 417 Mass. 187, 194 (1994), quoting from Waller, 467 U.S. at 48.

Although the judge did make an effort to reach a reasonable solution to the logistical problem created by the large venire, given the size of the court room in which she was sitting, the third factor was not met here. If it was not clear at the time of trial, the United States Supreme Court has made clear subsequently that the public trial right is sufficiently important that congestion alone cannot warrant closure of a court room unless the judge has examined reasonable alternatives that may be available, including dividing the jury venire in order to reduce congestion or moving to a larger court room if one is available. Presley, 558 U.S. at 214 ("[T]rial courts are required to consider alternatives to closure even when they are not offered by the parties"). Indeed, the record must show that the public could not have been accommodated at trial by the use of such alternatives before a court room can be closed to the public altogether: "Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials. Nothing in the record shows that the trial court could not have accommodated the public at [the defendant's] trial. Without knowing the precise circumstances, some possibilities include . . . dividing the jury venire panel to reduce courtroom

congestion."  Id. at 215.  See Owens, 483 F.3d at 62 ("[T]o our knowledge, a trial closure has not yet been justified on the basis of convenience to the court. . . .  Given the strong interest that courts have in providing public access to trials, the district court could have considered whether a larger courtroom was available for jury selection.  If the closure . . . did occur, the court was obligated to consider this alternative").  Consequently, in the absence of any showing on the record that such alternatives could not have been utilized, the closure of the court room here violated the defendant's Sixth Amendment right to a public trial.

The claim of error in this case was preserved.  Under longstanding case law court room closure is a structural error in which, because of the difficulty of showing prejudice, it is presumed as a matter of law.  Cohen (No. 1), 456 Mass. at 118-119.  Consequently, the judgment must be vacated.

One other issue raised by the defendant may recur in a retrial.  At trial, the defendant filed a motion to disclose evidence of the specific acts of violence of an individual who was not the victim for the purposes of showing that the individual was the first aggressor in the fight that led to the charges against the defendant.  See Commonwealth v. Adjutant, 443 Mass. 649, 664 (2005).  The judge denied the motion.  Although the parties failed to bring it to the attention of the

trial judge, prior to trial the Supreme Judicial Court had decided Commonwealth v. Pring-Wilson, 448 Mass. 718, 737 (2007), which allows Adjutant evidence to be admitted in some circumstances with respect to an individual who was not the defendant's victim. Thus, although we express no opinion on the admissibility of any evidence the defendant might present, should the defendant again seek to introduce Adjutant evidence with respect to a nonvictim, the judge will be required to assess its admissibility under Pring-Wilson and any other relevant case law in the first instance.

Judgment reversed.

Verdict set aside.

AGNES, J. (concurring).  I write separately because although I agree that a new trial is required, the able and conscientious trial judge was needlessly placed in a difficult situation due to the timing of the defendant's objection. Although it is not our responsibility to write rules or standing orders for the trial court, I respectfully suggest that consideration be given to a rule or policy that imposes on counsel in all cases involving trial by jury a duty, whenever reasonably possible, to bring to the judge's attention prior to trial any concern counsel may have regarding access to the court room by family members or friends of a party or the alleged victim, and any other members of the public, and that structures the judge's discretion with a framework for assessing the competing interests in a manner that will satisfy Federal and State law.[1]

---

[1] For example, under the current state of the law, there is no clear-cut rule about the minimum number of seats, if any, that must be available to members of the public during a trial to differentiate a complete closure of the court room from a partial closure.  And there is no clear-cut rule about how to accommodate the interests of family members or friends of a party or an alleged victim, the media, or other members of the public in being present in the court room during the trial when sufficient seats for all are not available.  This is not an isolated problem.  Furthermore, the Supreme Judicial Court has acknowledged that "in court houses across the Commonwealth, insufficient space may well provide a valid reason for the exclusion of the public during at least some part of jury empanelment proceedings, because the number of prospective jurors in the venire are likely to fill all or almost all of the available seats. . . .  It is not required that every seat not

In this case, the record indicates that on the day the jury were empaneled, the judge conducted a hearing, in open court and before any jurors were brought to the court room, during which she reviewed with defense counsel and the prosecutor the schedule that would be followed, the list of witnesses, the nature of the questions that prospective jurors would be asked, and the manner in which challenges for cause and peremptory challenges would be handled.  The judge informed counsel that she planned to empanel sixteen jurors.  The judge concluded the hearing by asking counsel if there were any other issues regarding empanelment that needed to be addressed, and neither counsel responded.  The record indicates that court recessed at 10:00 A.M. and reconvened at 10:25 A.M.  There is no indication in the record that during this interval defense counsel informed the judge that his client wished to have members of his family seated in the court room during empanelment.

When court convened, the court room was filled with prospective jurors, and the defendant was placed at the bar for trial.  See Commonwealth v. Elizondo, 428 Mass. 322, 325 (1998) ("The defendant's trial began when he was placed at the bar for

occupied by a prospective juror must be made available to the public; as noted, the possibility that jurors may be influenced or tainted by intermingling with spectators is a valid concern that may justify excluding members of the public until space permits them to sit apart from the prospective jurors." Commonwealth v. Cohen (No. 1), 456 Mass. 94, 114 (2010).

trial"). At this point, defense counsel informed the judge at sidebar that the defendant's family had been excluded from the court room and that he would like them to be present.[2] The judge explained that there were ninety jurors in the venire, and that approximately eighty of them occupied every available seat in the court room while ten others were standing because no other seats were available. The judge also indicated that "as seats become available," the family members would be brought into the court room. The judge also noted that it would be necessary to separate family members from prospective jurors. Defense counsel objected. After the sixth juror was seated, the judge inquired whether defense counsel wanted the defendant's family in the court room. When counsel responded in the affirmative, the judge inquired of the court officer whether seats were available. The judge was informed that seats were not yet available.[3] Defense counsel did not object again.

A short time later, a court officer informed the judge that one of the court room benches was then available. The judge

---

[2] Defense counsel stated, "I know it's a logistical nightmare, but my guy's family was excluded from the courtroom. And I would like them present, if possible."

[3] Although a number of prospective jurors had been excused by this point, it appears that some members of the venire had been seated in the jury box before empanelment began, and were moved to benches in the court room so jurors who were seated could be put in the box.

responded, "For the record, the defendant's family members are going to be seated in that bench right near the Court's bench." After three more prospective jurors were questioned, the judge noted, "[F]or the record, Mr. Lopes's family has all joined us on this bench near the Court's bench." The transcript indicates that the empanelment continued until sixteen jurors were seated. It was 12:35 P.M. The entire empanelment took slightly longer than two hours. The record does not indicate how much time elapsed from when empanelment commenced to when the defendant's family was admitted to the courtroom.[4]

In order to justify the complete closure of a court room at any stage of the trial, the "judge must make a case-specific determination that closure is necessary." Commonwealth v. Cohen (No. 1), 456 Mass. 94, 107 (2010). The judge's determination that closure is necessary must satisfy the four requirements set forth in Waller v. Georgia, 467 U.S. 39, 47 (1984). See Cohen

---

[4] The record does not permit us to determine that the closure was greater than the eighty-minute closure for the entire empanelment procedure that was deemed unjustified in Commonwealth v. Alebord, 467 Mass. 106, 111 (2014), and the seventy-nine-minute closure for the entire empanelment procedure that was deemed unjustified in Commonwealth v. Morganti, 467 Mass. 96, 101 (2014). The record before us indicates that empanelment lasted from about 10:25 A.M. until 12:35 P.M. Sixteen jurors in total were seated. The defendant's family was seated in the court room after eight jurors had been seated and an additional thirty-two had been excused. After the family members were seated, another eight jurors were seated and an additional twelve jurors were excused.

(No. 1), supra. Here, the judge acted promptly once the issue was called to her attention. The judge was mindful of the need for the safety of all concerned and the importance of not exposing prospective jurors to any extraneous influences. While the judge proceeded in a manner that showed regard for the defendant's rights, the record does not indicate that she explored whether reasonable alternatives to a complete closure of the court room existed once the issue was brought to her attention. Unlike other issues where the burden of demonstrating prejudice rests with the appealing party, when there is an objection to a complete court room closure based on insufficient space, as in this case, the judge has an independent duty to consider reasonable alternatives to a complete closure. Waller, supra at 48. See, e.g., United States v. Cervantes, 706 F.3d 603, 612-613 (5th Cir. 2013) (partial closure; magistrate judge properly limited access to court room during empanelment to three members of each defendant's family). Furthermore, once space in the court room becomes available, the judge must make a particularized determination, supported by adequate subsidiary findings, that those who seek access are not prevented from doing so absent an overriding interest. And any closure order must not be broader

than is reasonably necessary to accomplish its purpose.  See Cohen (No. 1), supra at 113-114.[5]

In the present case, the record does not reveal that the judge explored alternatives to a complete closure such as returning some members of the venire to the jury pool in order to free up space in the court room, or moving the proceedings to another court room.  Neither of these options may have been feasible in the circumstances, but no specific findings were made by the judge during the empanelment process or in her order denying the defendant's second motion for a new trial.

---

[5] It should be noted that the trial judge in this case did not have the benefit of the guidance set forth in Cohen (No. 1), supra at 111-116, when these events occurred.