Rubin, J.
This is the rare case in which a court room closure was ordered over the defendant’s objection during jury empanelment, subsequent to the decision of the United States Court of Appeals for the First Circuit in Owens v. United States, 483 F.3d 48 (1st Cir. 2007). That case and the subsequent cases from the Supreme Judicial Court, see, e.g., Commonwealth v. Cohen (No. 1), 456 Mass. 94 (2010), and from the United States Supreme Court, see Presley v. Georgia, 558 U.S. 209 (2010), confirm that a defendant’s right to a public trial under the Sixth Amendment to the United States Constitution includes a right to have the public present during jury empanelment.
*561 As our cases and those of the Supreme Judicial Court have now made clear, prior to Owens, and notwithstanding Waller v. Georgia, 467 U.S. 39 (1984), some court rooms around this Commonwealth routinely were closed during jury empanelment. See, e.g., Cohen (No. 1), supra at 102 (Superior Court in Norfolk County); Commonwealth v. Lavoie, 464 Mass. 83, 84-85 (2013) (Superior Court in Middlesex County); Commonwealth v. Morganti, 467 Mass. 96, 98 (2014) (Superior Court in Plymouth County); Commonwealth v. Alebord, 467 Mass. 106, 109 (2014) (Superior Court in Plymouth County). In many such cases, because of the long-standing culture of these court houses, no contemporaneous objection was made to these closures. In a wide range of circumstances, under subsequent Supreme Judicial Court case law, those objections have been held waived. See, e.g., Lavoie, supra at 88-89; Morganti, supra at 101-102; Alebord, supra at 112-113.
In this case, however, the jury venire was brought into the court room and, over the defendant’s objections, the court room was closed. In this direct appeal from his conviction of voluntary manslaughter, the defendant argues that closure was error, and that he is entitled to a new trial.[1]
The jury venire comprised ninety individuals. There were approximately eighty seats in the court room. The judge allowed in the entire venire and required ten of its members to stand. The defendant objected and asked to have his family seated but the judge, who was familiar with Owens, found that “[tjhere is no possible seating for them. For safety reasons, we really don’t want anybody to stand, but of necessity, we’re making a few of the venire people stand. And, also, we cannot have them within the venire for fear of jury contamination. But if seats become available, ... we can bring in your family members.”
The court room was closed and the defendant’s family members were excluded. They were not seated one at a time when individual seats became open. Nor were they seated as a group as soon as there was sufficient space in the court room to seat all the members of the defendant’s family, allowing some space between those spectators and the prospective jurors. Only after the intro *562 duction of the attorneys, the judge’s summary of the case, the general questioning of the venire, and the individual voir dire of thirty-seven prospective jurors,[2] did the judge instruct the court officer to seat the defendant’s family members. Three more jurors[3] were subject to individual voir dire before the judge noted that the defendant’s family members had been seated. They were then present for the individual voir dire of twenty jurors.[4] Thus, the defendant’s family members missed the individual voir dire of two-thirds of the potential jurors.[5] The trial transcript does not indicate whether the court officers subsequently allowed other members of the public to enter and be seated.[6]
In denying the defendant’s second motion for a new trial,[7] the judge concluded that the closure was de minimis. Cases decided by the Supreme Judicial Court and this court during the pendency of this appeal make clear, though, that this was not a de minimis closure. See, e.g., Morganti, 467 Mass. at 101 (seventy-nine-minute closure, lasting entirety of empanelment, not de minimis); Alebord, 467 Mass. at 111 (eighty-minute closure, lasting entirety of empanelment, not de minimis); Commonwealth v. White, 85 Mass. App. Ct. 491, 495-497 (2014) (closure during general questioning of venire not de minimis), vacated on other grounds, 87 Mass. App. Ct. 1132 (2015).
Thus, as Cohen No. 1 and Presley make clear, the determination that closure was necessary must satisfy the four factors articulated in Waller. Those factors are “[1] the party seeking to *563 close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.” Commonwealth v. Martin, 417 Mass. 187, 194 (1994), quoting from Waller, 467 U.S. at 48.
Although the judge did make an effort to reach a reasonable solution to the logistical problem created by the large venire, given the size of the court room in which she was sitting, the third factor was not met here. If it was not clear at the time of trial, the United States Supreme Court has made clear subsequently that the public trial right is sufficiently important that congestion alone cannot warrant closure of a court room unless the judge has examined reasonable alternatives that may be available, including dividing the jury venire in order to reduce congestion or moving to a larger court room if one is available. Presley, 558 U.S. at 214 (‘“[Tjrial courts are required to consider alternatives to closure even when they are not offered by the parties”). Indeed, the record must show that the public could not have been accommodated at trial by the use of such alternatives before a court room can be closed to the public altogether: “Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials. Nothing in the record shows that the trial court could not have accommodated the public at [the defendant’s] trial. Without knowing the precise circumstances, some possibilities include ... dividing the jury venire panel to reduce courtroom congestion.” Id. at 215. See Owens, 483 F.3d at 62 (“[T]o our knowledge, a trial closure has not yet been justified on the basis of convenience to the court. . . . Given the strong interest that courts have in providing public access to trials, the district court could have considered whether a larger courtroom was available for jury selection. If the closure ... did occur, the court was obligated to consider this alternative”). Consequently, in the absence of any showing on the record that such alternatives could not have been utilized, the closure of the court room here violated the defendant’s Sixth Amendment right to a public trial.
The claim of error in this case was preserved. Under longstanding case law court room closure is a structural error in which, because of the difficulty of showing prejudice, it is presumed as a matter of law. Cohen (No. 1), 456 Mass. at 118-119. Consequently, the judgment must be vacated.
*564 One other issue raised by the defendant may recur in a retrial. At trial, the defendant filed a motion to disclose evidence of the specific acts of violence of an individual who was not the victim for the purposes of showing that the individual was the first aggressor in the fight that led to the charges against the defendant. See Commonwealth v. Adjutant, 443 Mass. 649, 664 (2005). The judge denied the motion. Although the parties failed to bring it to the attention of the trial judge, prior to trial the Supreme Judicial Court had decided Commonwealth v. Pring-Wilson, 448 Mass. 718, 737 (2007), which allows Adjutant evidence to be admitted in some circumstances with respect to an individual who was not the defendant’s victim. Thus, although we express no opinion on the admissibility of any evidence the defendant might present, should the defendant again seek to introduce Adjutant evidence with respect to a nonvictim, the judge will be required to assess its admissibility under Pring-Wilson and any other relevant case law in the first instance.

Judgment reversed.

Verdict set aside.

 The defendant raised this issue below in his second motion for a new trial (while his direct appeal was stayed), but because he raised it in his direct appeal, i.e., his first appellate opportunity, the claim was preserved. See Mass.R.Crim.P. 30(c)(2), as appearing in 435 Mass. 1501 (2001). See also, e.g., Commonwealth v. Wall, 469 Mass. 652, 673 (2014); Commonwealth v. Celester, 473 Mass. 553, 578 (2016).

 Eight of the thirty-seven were seated, five were subject to peremptory challenge by the Commonwealth, and seven were subject to peremptory challenge by the defendant.

 One of the three was subject to peremptory challenge by the Commonwealth.

 Eight of the twenty were seated, three were subject to peremptory challenge by the Commonwealth, and two were subject to peremptory challenge by the defendant.

 This portion of the voir dire spanned ninety-nine out of the 133 transcript pages in the relevant volume that was devoted to empanelment. The judge below found that empanelment lasted two hours and ten minutes. If one were to use the fraction of jurors questioned during the closure to estimate the fraction of the total empanelment period the court room was closed, one would estimate the closure lasted more than one hour and twenty-five minutes. Using the fraction of transcript pages to make the estimate, one would estimate the closure lasted more than one hour and thirty-six minutes.

 The defendant challenges only the complete closure during the time period when his family members were excluded from the court room.

 The defendant’s direct appeal was consolidated with his appeals from the orders denying his second and third motions for a new trial.