Agnes, J.
(concurring). I write separately because although I agree that a new trial is required, the able and conscientious trial judge was needlessly placed in a difficult situation due to the tinting of the defendant’s objection. Although it is not our responsibility to write rules or standing orders for the trial court, I respectfully suggest that consideration be given to a rule or policy that imposes on counsel in all cases involving trial by jury a duty, whenever reasonably possible, to bring to the judge’s attention prior to trial any concern counsel may have regarding access to the court room by family members or friends of a party or the alleged victim, and any other members of the public, and that structures the judge’s discretion with a framework for assessing the competing interests in a manner that will satisfy Federal and State law.[1]
*565 In this case, the record indicates that on the day the jury were empanelled, the judge conducted a hearing, in open court and before any jurors were brought to the court room, during which she reviewed with defense counsel and the prosecutor the schedule that would be followed, the list of witnesses, the nature of the questions that prospective jurors would be asked, and the manner in which challenges for cause and peremptory challenges would be handled. The judge informed counsel that she planned to empanel sixteen jurors. The judge concluded the hearing by asking counsel if there were any other issues regarding empan-elment that needed to be addressed, and neither counsel responded. The record indicates that court recessed at 10:00 a.m. and reconvened at 10:25 a.m. There is no indication in the record that during this interval defense counsel informed the judge that his client wished to have members of his family seated in the court room during empanelment.
When court convened, the court room was filled with prospective jurors, and the defendant was placed at the bar for trial. See Commonwealth v. Elizondo, 428 Mass. 322, 325 (1998) (“The defendant’s trial began when he was placed at the bar for trial”). At this point, defense counsel informed the judge at sidebar that the defendant’s family had been excluded from the court room and that he would like them to be present.[2] The judge explained that there were ninety jurors in the venire, and that approximately eighty of them occupied every available seat in the court room while ten others were standing because no other seats were available. The judge also indicated that “as seats become available,” the family members would be brought into the court room. The judge also noted that it would be necessary to separate family *566 members from prospective jurors. Defense counsel objected. After the sixth juror was seated, the judge inquired whether defense counsel wanted the defendant’s family in the court room. When counsel responded in the affirmative, the judge inquired of the court officer whether seats were available. The judge was informed that seats were not yet available.[3] Defense counsel did not object again.
A short time later, a court officer informed the judge that one of the court room benches was then available. The judge responded, “For the record, the defendant’s family members are going to be seated in that bench right near the Court’s bench.” After three more prospective jurors were questioned, the judge noted, “[F]or the record, Mr. Lopes’s family has all joined us on this bench near the Court’s bench.” The transcript indicates that the empanelment continued until sixteen jurors were seated. It was 12:35 p.m. The entire empanelment took slightly longer than two hours. The record does not indicate how much time elapsed from when empanelment commenced to when the defendant’s family was admitted to the court room.[4]
In order to justify the complete closure of a court room at any stage of the trial, the “judge must make a case-specific determination that closure is necessary.” Commonwealth v. Cohen (No. 1), 456 Mass. 94, 107 (2010). The judge’s determination that closure is necessary must satisfy the four requirements set forth in Waller v. Georgia, 467 U.S. 39, 47 (1984). See Cohen (No. 1), supra. Here, the judge acted promptly once the issue was called to her attention. The judge was mindful of the need for the safety of all concerned and the importance of not exposing prospective jurors to any extraneous influences. While the judge proceeded in a manner that showed regard for the defendant’s rights, the record *567 does not indicate that she explored whether reasonable alternatives to a complete closure of the court room existed once the issue was brought to her attention. Unlike other issues where the burden of demonstrating prejudice rests with the appealing party, when there is an objection to a complete court room closure based on insufficient space, as in this case, the judge has an independent duty to consider reasonable alternatives to a complete closure. Waller, supra at 48. See, e.g., United States v. Cervantes, 706 F.3d 603, 612-613 (5th Cir. 2013) (partial closure; magistrate judge properly limited access to court room during empanelment to three members of each defendant’s family). Furthermore, once space in the court room becomes available, the judge must make a particularized determination, supported by adequate subsidiary findings, that those who seek access are not prevented from doing so absent an overriding interest. And any closure order must not be broader than is reasonably necessary to accomplish its purpose. See Cohen (No. 1), supra at 113-114.[5]
In the present case, the record does not reveal that the judge explored alternatives to a complete closure such as returning some members of the venire to the jury pool in order to free up space in the court room, or moving the proceedings to another court room. Neither of these options may have been feasible in the circumstances, but no specific findings were made by the judge during the empanelment process or in her order denying the defendant’s second motion for a new trial.

 For example, under the current state of the law, there is no clear-cut rule about the minimum number of seats, if any, that must be available to members of the public during a trial to differentiate a complete closure of the court room from a partial closure. And there is no clear-cut rule about how to accommodate the interests of family members or friends of a party or an alleged victim, the *565 media, or other members of the public in being present in the court room during the trial when sufficient seats for all are not available. This is not an isolated problem. Furthermore, the Supreme Judicial Court has acknowledged that “in court houses across the Commonwealth, insufficient space may well provide a valid reason for the exclusion of the public during at least some part of jury empanelment proceedings, because the number of prospective jurors in the venire are likely to fill all or almost all of the available seats. ... It is not required that every seat not occupied by a prospective juror must be made available to the public; as noted, the possibility that jurors may be influenced or tainted by intermingling with spectators is a valid concern that may justify excluding members of the public until space permits them to sit apart from the prospective jurors.” Commonwealth v. Cohen (No. 1). 456 Mass. 94, 114 (2010).

 Defense counsel stated, “I know it’s a logistical nightmare, but my guy’s family was excluded from the courtroom. And I would like them present, if possible.”

 Although a number of prospective jurors had been excused by this point, it appears that some members of the venue had been seated in the jury box before empanelment began, and were moved to benches in the court room so jurors who were seated could be put in the box.

 The record does not permit us to determine that the closure was greater than the eighty-minute closure for the entire empanelment procedure that was deemed unjustified in Commonwealth v. Alebord, 467 Mass. 106, 111 (2014), and the seventy-nine-minute closure for the entire empanelment procedure that was deemed unjustified in Commonwealth v. Morganti, 467 Mass. 96, 101 (2014). The record before us indicates that empanelment lasted from about 10:25 a.m. until 12:35 p.m. Sixteen jurors in total were seated. The defendant’s family was seated in the court room after eight jurors had been seated and an additional thirty-two had been excused. After the family members were seated, another eight jurors were seated and an additional twelve jurors were excused.

 It should be noted that the trial judge in this case did not have the benefit of the guidance set forth in Cohen (No. 1). supra at 111-116, when these events occurred.