# United States Court of Appeals
## For the First Circuit

No. 18-1278

JEFFREY HARDY,

Petitioner, Appellant,

v.

MICHAEL MALONEY,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Stahl, and Lipez,
Circuit Judges.

Robert L. Sheketoff on brief for appellant.
Thomas E. Bocian, Assistant Attorney General, with whom Maura Healey, Attorney General of Massachusetts, was on brief for appellee.

November 30, 2018

LYNCH, **Circuit Judge**.  Jeffrey Hardy was convicted of first degree murder by a Massachusetts jury in 1995.  Hardy, who is currently serving a life sentence in a state correctional facility, appeals the district court's denial of his petition for a writ of habeas corpus.  After careful review, we conclude that the challenged state court rulings were neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, and we affirm.  See 28 U.S.C. § 2254(d)(1).

I.

Because Hardy does not challenge the state's factfinding, we take the following facts from the Massachusetts Supreme Judicial Court's (SJC) decision in Commonwealth v. Hardy (Hardy I), 727 N.E.2d 836 (Mass. 2000), supplemented by a few undisputed facts of record.  See 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Hardy spent the afternoon of April 27, 1994, in Somerville, Massachusetts playing basketball and drinking alcohol with a group that included Christopher Rogovich, Gerald Sullivan, Richard Allison, and Thomas Moran, the victim.  See Hardy I, 727 N.E.2d at 838.  At some point, Hardy and Sullivan left to buy

marijuana laced with phencyclidine, or PCP, from a dealer.  Id. at 838-39.

Sullivan and Moran smoked the drug twice later that afternoon and evening.  Id. at 839.  Moran, saying that the PCP was weak, complained throughout the evening that it was "fake."  Id.  Moran repeatedly called Sullivan and Hardy "chumps" and "idiots," because they "got beat" by the dealer.  Id.  Visibly upset by Moran's comments, Hardy again left, returning with a gun obtained from Steven Murphy, which Hardy hid in his pants.  Id.

The group eventually drove in Hardy's car to a bar.  Id.  They later assembled at a Dunkin' Donuts parking lot, where Hardy and Moran exchanged insults.  See id. at 839-40.

Eventually, the group drove away from the Dunkin' Donuts, but they did not get far before Hardy pulled over so that he, Sullivan, and Allison could talk privately outside.  Id.  When the three men returned to the car, where Moran had remained, Hardy announced, "We got to go meet the dealer."  Id.  Hardy drove them to a Medford park, where everyone got out and Hardy directed them where to stand.  Id.

At some point, Sullivan had gotten Hardy's gun, and at trial, Rogovich testified that, in the park, Sullivan pointed the gun at Moran's head.  Id.  Hardy then grabbed the gun and shot Moran.  Id.  Moran said, "Hardy shot me in the mouth," and Hardy

replied, "Now you'll shut your fuckin' mouth."  Id.  Rogovich then watched Sullivan, Allison, and Hardy stab Moran.  Id.

Moran was found in the park at 5:30 the next morning with a gunshot wound to the face and seventy-nine stab wounds all over his body.  Id. at 838.  That day, Murphy, who had given the gun to Hardy, said, "That was a pretty sick thing that you did."  Id. at 839.  Hardy responded, "Did you hear how many times we got him?  Eighty times."  Id.

Hardy was charged with first degree murder.  Id. at 838.  At trial, the state's two main witnesses were Rogovich, who was granted immunity to testify, and Murphy.  Id. at 838-39.

Hardy testified at trial and presented an alibi defense, claiming that he had gone to the Dunkin' Donuts with Sullivan to buy drugs and then to his grandfather's house.  Id. at 840.  Hardy also denied that Moran had expressed a problem with the PCP and denied having gotten a gun.  Id.  Finally, Hardy alleged inadequacies in the police investigation into other possible suspects, as part of a theory that a third party had committed the murder.  See id. at 843 & n.5.

After the jury voted to convict, the judge sentenced Hardy to the mandated sentence of life in prison without the possibility of parole.  Hardy appealed, and the SJC upheld the conviction and the denial of his motion for a new trial in 2000, in Hardy I.  Id. at 838.

Hardy then filed a petition for habeas corpus in federal court that asserted nine claims of federal constitutional error. The district court determined that six of those nine claims were unexhausted, and stayed the petition for Hardy to exhaust the claims.

Hardy filed a second motion for a new trial, which was denied in state Superior Court. That denial was affirmed by the SJC. See Commonwealth v. Hardy (Hardy II), 984 N.E.2d 727, 730 (Mass. 2013).

When Hardy revived his habeas petition in federal court, two of his nine claims were dismissed as unexhausted. Adopting the magistrate judge's report and recommendation, the district court denied the petition on the seven remaining claims. See Hardy v. Maloney, No. 01-CV-10794-PBS, 2018 WL 1257758, at *1 (D. Mass. Mar. 8, 2018).

## II.

A state court's legal determination cannot be overturned on federal habeas review unless it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). On each of his claims, Hardy asserts the latter type of error.

A state court has unreasonably applied federal law when "it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."

- 5 -

White v. Woodall, 572 U.S. 415, 426 (2014). That "standard[]" ensure[s] that federal habeas relief will be granted only in cases in which all fairminded jurists would agree that a final state court decision is at odds with the Supreme Court's existing precedents." Bebo v. Medeiros, 906 F.3d 129, 134 (1st Cir. 2018) (citing Harrington v. Richter, 562 U.S. 86, 102 (2011)).

We review the district court's denial of the habeas petition de novo. See Scott v. Gelb, 810 F.3d 94, 98 (1st Cir. 2016).

A. Jury Instructions

Hardy claims that the SJC unreasonably rejected his arguments that the trial judge's omission of a jury instruction requested by Hardy and the trial judge's giving of another instruction requested by the prosecution each violated his due process rights.

"As a general rule, improper jury instructions will not form the basis for federal habeas relief." Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982). That is because state law typically governs jury instructions, and an error "under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To succeed on a claim of instructional error where there is no federal law directly on point, then, a federal habeas petitioner like Hardy must show that the error "so infected the

- 6 -

entire trial that the resulting conviction violates due process." Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

### 1. Omission of a Bowden Instruction

Hardy's first claim involves the omission of an instruction based on Commonwealth v. Bowden, 399 N.E.2d 482, 491 (Mass. 1980), about alleged inadequacies in the police investigation. The SJC upheld the district court's decision not to give the instruction. Hardy I, 727 N.E.2d at 843; Hardy II, 984 N.E.2d at 736.

Hardy claims that the SJC's ruling was an unreasonable application of Mathews v. United States, 485 U.S. 58 (1988), and specifically of Mathews' statement that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Id. at 63. The SJC ruled that this statement from Mathews was inapposite because Bowden does not establish a recognized defense. As the SJC explained, it has held as a matter of state law that "Bowden does not create a 'defense.'" Hardy II, 984 N.E.2d at 736 (quoting Commonwealth v. Lao, 948 N.E.2d 1209, 1218 (Mass. 2011)). Bowden "merely recognizes that a defendant is entitled to present evidence that certain tests were not conducted or certain police procedures not followed [that] could raise a reasonable doubt as to the defendant's guilt in the minds of the jurors." Id. (alteration in

- 7 -

original) (internal quotation marks omitted) (quoting Lao, 948 N.E.2d at 1218). Defining defenses and the elements of state crimes is a matter of state law, see, e.g., Patterson v. New York, 432 U.S. 197, 201-02 (1977), and state courts' state law interpretations bind federal courts on habeas review, see Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

At oral argument, Hardy's counsel said that the SJC's ruling is at odds with Mathews' description of a recognized defense. Mathews, however, does not define the term recognized defense. Further, the Supreme Court has never applied the language in Mathews relied on by petitioner in any other case, nor to any defense other than the entrapment defense at stake in Mathews. Mathews held that a defendant "is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." Mathews, 485 U.S. at 62. That neither Mathews nor any other Supreme Court case requires states to give an instruction on inadequate police investigation dooms Hardy's argument. The SJC'S ruling was not an unreasonable application of clearly established federal law.

We add that the statement Hardy extracts from Mathews is dicta, not a holding, and we do not set aside state court rulings on habeas review for being at odds with Supreme Court dicta. See Woods v. Donald, 135 S.Ct. 1372, 1376 (2015) ("'[C]learly established Federal law' for purposes of § 2254(d)(1) includes

- 8 -

only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions." (quoting White, 572 U.S. at 419)).

Independently, Hardy's claim also fails to the extent that he contends the omission of the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). The SJC was not unreasonable in concluding that any prejudice to Hardy was minimal, as Hardy was "allowed adequately to explore the alleged deficiencies and argued them extensively during closing." Hardy I, 727 N.E.2d at 843; see Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.").

### 2. Giving of a Consciousness of Guilt Instruction

Hardy denied to police that he was involved in a drug transaction but then admitted involvement in the transaction once police asked him about Moran's murder. Based on this incident, the trial court gave a consciousness of guilt instruction that read in part, "the jury may consider whether an individual voluntarily makes, willfully, false statements or acted in a manner inconsistent with innocence as being probative of consciousness of guilt."

Hardy asserts that the SJC's decision to uphold this instruction was an unreasonable application of the rule from Francis v. Franklin that "mandatory presumption" instructions can

violate due process "if they relieve the State of the burden of persuasion on an element of an offense." 471 U.S. 307, 314 (1985) (citing Patterson, 432 U.S. at 215). However, as the SJC correctly noted, that standard from Francis applies only to mandatory presumption instructions, not to "permissive inference" instructions that merely "suggest[] to the jury a possible conclusion to be drawn if the State proves predicate facts" (and therefore do not shift the burden of persuasion). Francis, 471 U.S. at 314; see Hardy II, 984 N.E.2d at 736. The instruction here was permissive -- "the jury may." As the SJC recognized, a permissive instruction "violates the due process clause . . . 'only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.'" Hardy II, 984 N.E.2d at 736 (quoting Francis, 471 U.S. at 314-15). The SJC ultimately ruled that "the evidence in this case could reasonably support an inference that the defendant's false statement reflected his consciousness of guilt." Id. at 736-37. This conclusion was not beyond the boundaries of what reason and common sense justify.

B.   Prosecutor's Closing Argument

Hardy asserts that he presented and the SJC unreasonably rejected his argument that misconduct in the prosecutor's closing arguments violated his due process rights. He points us to three

comments by the prosecutor -- about Rogovich's immunity deal, Rogovich's credibility, and Hardy's third-party culprit theory.

The SJC properly relied on state law consistent with Darden v. Wainwright, 477 U.S. 168 (1986). See Hardy II, 984 N.E.2d at 736.[1] Under Darden, "It is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (internal quotation marks omitted). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). This standard requires "case-by-case determinations," Parker v. Matthews, 567 U.S. 37, 48 (2012), about factors like the nature and seriousness of the comments, whether the comments were invited by defense arguments, whether the jury was adequately instructed, and the weight of the evidence, see, e.g., Darden, 477 U.S. at 181-82.

1.   Prosecutor's Improper Immunity Comments

Hardy's first claim relates to the prosecutor's statement that "Chris Rogovich only testified at this trial after

---

[1]   The SJC rejected the federal due process claims in Hardy II.  984 N.E.2d at 736 ("Because resolution of the defendant's claim under Massachusetts law was consistent with [Darden's] standard, our consideration of Federal law would not have changed the outcome" in Hardy I.).

- 11 -

the Supreme Judicial Court of our Commonwealth said, 'Mr. Rogovich, you are going to testify or you're going to be held in contempt and go to jail, and you'd better not lie.'" Hardy challenges as an unreasonable application of federal law the SJC's conclusion "that, while the prosecutor's improper arguments were egregious, they were not so prejudicial as to be irremediable, and the judge's approach was sufficiently aggressive to ameliorate the error created by them." Hardy I, 727 N.E.2d at 845; see also Hardy II, 984 N.E.2d at 736.

A comparison to Darden illustrates that the SJC's ruling was not unreasonable. In Darden, the prosecution's closing arguments characterized the defendant as an "animal" and included "offensive comments reflecting an emotional reaction to the case." Darden, 477 U.S. at 180. "These comments undoubtedly were improper," the Supreme Court said. Id. Nevertheless, it concluded that Darden's rights had not been violated, in part because of the judge's instructions to the jury that "their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence." Id. at 182.

Similarly, as the SJC emphasized, the judge at Hardy's trial instructed the jury at length not only on immunity but also on the prosecutor's statements at closing. "During [closing] argument," the judge said, "the Commonwealth . . . personalized [immunity] as the Supreme Judicial Court instructing a particular

- 12 -

witness."  "[I]t is not in that personalized form."  Further, the judge defined immunity's scope, explaining "[o]nce granted [immunity], a witness knows that he or she cannot be" prosecuted for the crime about which he or she testifies.  The judge continued, "No one can be granted immunity for perjury at a trial, no witness."

Hardy asserts that it was unreasonable for the SJC to have determined that "the trial court's instructions could . . . fairly be said to have tipped the balance."  Not so. In Donnelly v. DeChristoforo, on which the SJC also relied, see Hardy II, 984 N.E.2d at 736, the Supreme Court found no due process violation when the prosecutor's offending "remark . . . was but one moment in an extended trial and was followed by specific disapproving instructions," Donnelly, 416 U.S. at 645.  Given the specificity of the instructions at Hardy's trial and the isolated nature of the prosecutor's comments, the SJC's conclusion that the immunity instructions were "sufficiently aggressive to ameliorate the error" was not an unreasonable application of Supreme Court case law.  Hardy I, 727 N.E.2d at 845.

        2.    Prosecutor's Statement about Witness Credibility

Second, Hardy challenges as unreasonable the SJC's ruling that his due process rights were not violated by another closing statement about Rogovich's credibility.  The prosecutor

- 13 -

said:  "Why do you think Chris Rogovich took the Fifth Amendment? He was there.  He's telling you the truth."

The SJC rejected this claim, concluding that "the prosecutor did not improperly vouch for the credibility of the immunized witness."  Hardy I, 727 N.E.2d at 843 (citing Commonwealth v. Chavis, 616 N.E.2d 423, 429 (Mass. 1993)).  That was so because, although "[a] prosecutor may not assert his or her personal opinion as to the credibility of a witness," a "prosecutor may comment on evidence developed at trial and draw inferences from such evidence" and a "prosecutor may make a fair response to an attack on the credibility of a government witness."  Chavis, 616 N.E.2d at 429.  Indeed, as the SJC observed, throughout the trial, "the credibility of Rogovich was highly contested."  Hardy I, 727 N.E.2d at 844.  For example, defense counsel declared at closing, "Chris Rogovich's story changes" and "[h]e's telling [police] what they wanted to hear."

Again, a comparison to the Supreme Court's cases demonstrates that the SJC's ruling was not unreasonable.  As in Darden, that "[m]uch of the" objected-to "content was invited by or was responsive to the opening summation of the defense" was relevant to the comments' "effect on the trial as a whole." Darden, 477 U.S. at 182.  The defense in Darden, in advancing a third-party culprit theory, had used the word "animal" to describe

- 14 -

the perpetrator of the crime, a characterization the prosecutor later adopted.  Id. at 179-82.

Darden also cited United States v. Young, 470 U.S. 1 (1985), which held that reversal on due process grounds was unwarranted when "the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale.'" Id. at 12-13.  There, the defense's summation had suggested that the prosecution did not believe its own case and the prosecutor responded by offering several personal opinions about the defendant's guilt.  Id. at 4-6.  Here, it was not unreasonable for the SJC similarly to conclude that the prosecution's remarks were a proportional response to defense counsel's repeated attempts to erode Rogovich's credibility.

Hardy suggests that the SJC's decision was unreasonable because it is always improper for a prosecutor to offer a personal opinion and because an improper argument can never be an "invited response" to a proper defense argument.  Yet "the idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole," for purposes of resolving a due process claim.  Darden, 477 U.S. at 182 (citing Young, 470 U.S. at 13).  On that score, what matters here, as the SJC recognized, was that "the credibility of Rogovich was highly contested" and, that, overall, "the Commonwealth's case was very strong."  Hardy I, 727 N.E.2d at 844; see Darden, 477 U.S. at 182

- 15 -

(concluding that "[t]he weight of the evidence against petitioner was heavy," which "reduced the likelihood that the jury's decision was influenced by argument"). The SJC's ruling was not an unreasonable application of federal law.

        3.    <u>Prosecutorial Comment on Third-Party Culprit Defense</u>

Hardy also asserts that the prosecutor's dismissive commentary on the possibility of a third-party culprit violated his due process rights, and that the SJC's contrary conclusion was unreasonable.

In closing, the prosecutor said, "Well let me ask you this, ladies and gentlemen. What scintilla of evidence have you heard that could lead you to conclude that the Charlestown kids or the Somerville Project kids were in any way connected with the murder of Thomas Moran?" Defense counsel objected, and the judge responded, "I'll take care of it later." The judge eventually instructed the jury on the burden of proof.

The SJC found no error. See <u>Hardy I</u>, 727 N.E.2d at 843; <u>Hardy II</u>, 984 N.E.2d at 736. It cited past SJC cases deeming proper a prosecutor's closing comment about the "unbelievability of the defendant's account" and holding that such comments "created no misimpression" about the burden of proof, especially where the judge gave "careful instructions." <u>Commonwealth</u> v. <u>Moore</u>, 556

- 16 -

N.E.2d 392, 399 (Mass. 1990); see also Commonwealth v. Borodine, 353 N.E.2d 649, 655 (Mass. 1976).

The SJC's decision was not an unreasonable application of Darden, Donnelly, and Young.[2]  As in Darden and Young, the prosecutor's comments were invited by the defense's theory. Furthermore, as in Darden and Donnelly, the judge "gave comprehensive" curative instructions, this time "on the burden of proof."  Hardy I, 727 N.E.2d at 843.

C.    Co-Conspirators' Confessions

Hardy was tried alone, not with his co-conspirators. Nevertheless, invoking Bruton v. United States, 391 U.S. 123 (1968), Hardy claims that the admission of statements made by non-testifying co-conspirators violated his constitutional rights and that the SJC's ruling to the contrary was unreasonable.

At Hardy's trial, Murphy testified that both Sullivan and Allison had confessed to murdering Moran, and that Allison had implicated Hardy by name in the murder.  Hardy I, 727 N.E.2d at 841.  Specifically, Murphy testified that Sullivan had admitted that "we jumped on [Moran] and stabbed him."  And Murphy testified that Allison had said that he, Sullivan, Rogovich, and Hardy had

_____

[2]    Hardy cites only to Duncan v. Louisiana, 391 U.S. 145 (1968), which applied the Sixth Amendment right to jury trial to the states.  The district court characterized Hardy's argument as a claim that the prosecutor impermissibly shifted the burden of proof to the petitioner.  Regardless of the precise objection to the prosecutor's conduct, Darden applies.

- 17 -

"just killed Tommy Moran."[3]  Hardy objected to the admission of these statements, but the trial judge ruled that they were admissible under the joint venture exception to the hearsay rule. The SJC agreed that this exception applied, and held that Bruton did not.  Hardy I, 727 N.E.2d at 841-42 & n.3.

The SJC was not unreasonable in concluding that Bruton does not extend to Hardy's situation.  Bruton involved a joint trial at which a non-testifying co-defendant's inculpatory statements were introduced, despite those statements being "clearly inadmissible against" the other co-defendant "under traditional rules of evidence."  Bruton, 391 U.S. at 128 n.3.  In contrast, as the SJC noted, Hardy was not only tried separately from Sullivan and Allison, but also the statements were admissible against Hardy under the rules of evidence.  See Hardy I, 727 N.E.2d at 841-42 & n.3.

The concern underlying Bruton does not arise in Hardy's situation.  In Bruton, the Supreme Court explained, the "problem ar[ose] only because the statement was . . . admissible against" defendant one (who made the statements implicating both defendants) under the "traditional rules of evidence," but was "clearly inadmissible against [defendant two] under traditional

---

[3]    In essence, then, Sullivan's confession added credibility to Allison's statement and explicit implication of Hardy.

rules of evidence." 391 U.S. at 128 n.3. As a result, the statements were submitted to the jury as "legitimate evidence against" defendant one, and were "properly before the jury during its deliberations" about that defendant. Id. at 127. This made it likely that "the jury would believe . . . that [the statements] were true." Id. But the statements were improperly before the jury in its deliberations about defendant two. Id. at 128 n.3. Even with an instruction "to disregard the inadmissible hearsay evidence" as to defendant two, the Supreme Court saw the risk of prejudice as amounting to a "deni[al] [of defendant two's] constitutional right of confrontation." Id. at 128.

There was no such risk of prejudice in Hardy's case, for the two reasons the SJC identified. It recognized that Murphy's testimony about the confessions "created a Bruton problem and that Sullivan's statements would not be admissible against the defendant if the two were tried together." Hardy I, 727 N.E.2d at 842 n.3 (emphasis added). But Hardy was tried alone (at his request). And, as the SJC indicated, severance is often the remedy to a Bruton problem. See, e.g., Zafiro v. United States, 506 U.S. 534, 539 (1993) (noting that Bruton violations can "present a risk of prejudice" warranting severance of trials). Further, the SJC explained, there was no "Bruton problem," in part because "there [was] a valid [evidentiary] basis" for introducing the non-

testifying co-conspirators' statements against Hardy.  Hardy I, 727 N.E.2d at 842 n.3.

Yet Hardy asserts that "[t]he proffered explanation -- joint venturer statements [--] does not pass muster in the circumstances here."  The SJC concluded, applying state evidentiary rules, that "the Commonwealth introduced sufficient evidence to warrant a finding that the defendant, Allison, and Sullivan jointly conspired to kill the victim, and that the venture was not over when Allison and Sullivan confessed to Steven Murphy." Hardy I, 727 N.E.2d at 841–42 (citing Commonwealth v. Bongarzone, 455 N.E.2d 1183, 1192 (Mass. 1983)).

Even if there were errors of state law, such errors are not themselves a basis for federal habeas relief, see, e.g., Pulley v. Harris, 465 U.S. 37, 41 (1984), so Hardy must show that the evidentiary ruling was "so arbitrary or capricious as to constitute an independent due process . . . violation," Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  There may be some cases in which a state court's evidentiary ruling results in a fundamentally unfair trial.  See, e.g., Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (stating that the Due Process Clause places some limits on state evidentiary rules).  But Hardy does not identify any Supreme Court case holding that the admission of evidence like Murphy's testimony rises to that level of unfairness.

D.    Spectators' Comments to the Jury While the Jury Was on a View

Early on in Hardy's trial, while the judge, jury, and counsel were on a view of the Medford park, spectators around the park shouted comments at the jury. Hardy I, 727 N.E.2d at 840. The judge immediately told the jurors to disregard the comments, and, back at the courthouse, conducted an individual voir dire. Id. Fourteen of the sixteen jurors had heard either "Jeffrey Hardy is a murderer," Hardy's name, or "murderer." Id. All jurors told the judge that the incident would not affect their ability to remain fair and impartial. Id. Hardy then moved for a mistrial, and the judge, determining that the jury remained impartial, denied the motion. Id. The SJC affirmed, reasoning that "[t]he record here fully supports the judge's conclusion that the jury remained fair and impartial, and the defendant's motion was properly denied." Id. at 841. Hardy now argues that the SJC's decision was an unreasonable application of federal law.

Juror impartiality is a "factual issue" on federal habeas review, as it "depends heavily on the trial court's appraisal of witness credibility and demeanor." Thompson v. Keohane, 516 U.S. 99, 111 (1995) (citing Wainwright v. Witt, 469 U.S. 412, 429 (1985)).[4]

---

[4]    Factual issues are reviewed under § 2254(d)(2), which instructs federal courts to set aside only those state court rulings "result[ing] in a decision that was based on an

- 21 -

Here, Hardy characterizes his claim that the SJC unreasonably affirmed the denial of a mistrial as a legal issue. The Supreme Court has clearly established that there is "broad discretion reserved to the trial judge" to decide "the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial." Illinois v. Somerville, 410 U.S. 458, 462 (1973). Under this fact-specific standard, Hardy's claim fails because he is unable to point to any Supreme Court case holding, on similar facts, that a mistrial is required. See, e.g., Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.").

He offers only Sheppard v. Maxwell, 384 U.S. 333 (1966), and Irvin v. Dowd, 366 U.S. 717 (1961), cases vacating convictions for "depriv[ations] of a fair trial . . . because of . . . massive, pervasive and prejudicial publicity." Sheppard, 384 U.S. at 335; see also Irvin, 366 U.S. at 726-28. But Sheppard and Irvin are not analogous to this case. The "huge . . . wave of public passion" surrounding those cases, before, during, and after the trials, made it next-to impossible for jurors to remain impartial. Irvin, 366 U.S. at 728. Indeed, in Irvin, "two-thirds of the [jury] members admit[ted], before hearing any testimony, to

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

- 22 -

possessing a belief in [the petitioner's] guilt."  Id.  Wall-to-wall media coverage such as in those two cases is a far cry from the isolated extraneous contact in the park.  The SJC did not unreasonably apply Supreme Court case law in affirming the district court's denial of the motion for a mistrial.

III.

We affirm the denial of the petition for habeas corpus.